UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MOSTAFA ASSI,**

    **PLAINTIFF,**        CASE NO. 1:20-CV-674
                                         HON.

v.

**MICHIGAN STATE UNIVERSITY,
THE BOARD OF TRUSTEES OF MICHIGAN
STATE UNIVERSITY, ANDREA AMALFITANO,
ELIZABETH PETSCHE, JACOB ROWAN,
SUSAN ENRIGHT, AND BRUCE WOLF,**
JOINTLY AND SEVERALLY,

    **Defendants.**

_____

**AHMAD A. CHEHAB (P75560)**
Attorney for Plaintiff
31440 Northwestern Hwy., Suite 110
Farmington Hills, MI 48334
Ph: 313.335.1539
E-mail: achehab@collinsblaha.com

_____

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

NOW COMES Mostafa Assi, Plaintiff in this action, by and through his attorney, Ahmad A. Chehab, and for his Complaint against the above-named Defendants, states as follows:

**A. JURISDICTION AND VENUE**

1. This is an action for damages and other relief arising under the United States Constitution and the laws of the United States.

1

2. The Court has subject-matter jurisdiction under 42 U.S.C. 1983 and the 14th Amendment (the Due Process Clause) of the United States Constitution because 28 U.S.C. § 1331 gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

3. Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

## B.  PARTIES

4. The Plaintiff is a former student in the Michigan State University School of Osteopathic Medicine, who resides at 22186 Beech Street, Dearborn, Michigan 48124.

5. Defendant Michigan State University (hereinafter, "Defendant MSU") was at all relevant times and continues to be a public university organized and existing under the laws of the state of Michigan. Defendant The Board of Trustees of Michigan State University (hereinafter, "Defendant MSU Trustees") is the governing body for Michigan State University. It operates a number of affiliated colleges, including the College of Osteopathic Medicine (hereinafter "MSUCOM").

6. At all relevant times, Defendant Andrea Amalfitano was the Dean of the Defendant's College of Osteopathic Medicine.

7. At all relevant times, Defendant Elizabeth Petsche was course director of MSUCOM's pre-clerkship curriculum and served on the Dean's Executive Staff, although she is not presently so employed.

8. At all relevant times, Defendant Jacob Rowan was Chair of the MSUCOM - COSE.

9. At all relevant times, Defendant Susan Enright was the MSUCOM Clerkship Director.

10. At all relevant times, Defendant Bruce Wolf was the MSUCOM MSSR College Hearing Committee Chair.

11. At all relevant times, the individual defendants mentioned, acting individually and collectively, were agents of Defendant MSU and were acting under color of state law to the extent that their acts were beyond the bounds of lawful authority, while purportedly done in furtherance of their official duties.

12. Defendants' actions as described herein were taken in accordance with MSU's custom, policy, and/or practice.

13. Defendants' conduct under color of state law proximately caused the deprivation of Plaintiff's federally protected rights and his resulting grievous injuries. Defendants' conduct was done willfully, wantonly, and with reckless disregard of Plaintiff's rights, interests, and feelings.

### C.  FACTUAL ALLEGATIONS

14. In the Spring of 2014, Mr. Assi was admitted to the MSUCOM, with a commencement in May 2014, and graduation scheduled for Spring, 2018. Accordingly, the Plaintiff was admitted to the MSUCOM as part of the Class of 2018 and was issued a copy/had previously obtained a copy of the institution's official "Policy."

15. Upon his admission to the MSUCOM, the Plaintiff was provided the MSUCOM's written booklet, which contained the so-called "Policy for Retention, Promotion, and Graduation," which was specifically denoted as being for the Class of 2018 (hereinafter, "Class of 2018 Policy"), of which Plaintiff Assi was a member. This document was detailed, extensively reticulated, and authoritative as to the obligations, duties, and procedures that fully defined the expectations of MSUCOM and its students.

16. During his initial two years as a student, the Plaintiff passed all his classes as well as the simulated exam given to students at MSUCOM to better prepare them to take the Biomedical/Biochemical and Humanistic Domain examinations. During the spring semester, 2018, Mr. Assi was a fourth-year, second and final semester medical student on the cusp of graduation. A requirement for graduation is the successful passing of the COMLEX Level 2-PE (hereinafter, "COMLEX 2"). On July 13, 2017, on his first attempt, Plaintiff passed the Biomedical/Biomechanical Domain, but failed the Humanistic Domain. On October 11, 2017, on his second attempt, he passed the Humanistic Domain but failed the Biomedical/Biomechanical Domain. And on January 12, 2018, he failed both Domains.

17. The MSUCOM's Class of 2018 Policy was deliberately changed to be biased against him, as embodied in the booklet referenced above, and may be only changed after being reviewed and noted on by the MSUCOM faculty at the MSUCOM Spring Semester Faculty Assembly meeting. The policy change in question was submitted for faculty review March 1, 2018. Plaintiff was dismissed

3

on March 7, 2018. The Spring 2018 Faculty assembly meeting was held March 8, 2018.

18. To demonstrate his seriousness of purpose after failing on part of the first attempt, Mr. Assi purchased various study preparatory materials. After his second attempt, he enrolled in a special course administered by the creators of the test.

19. Prior to March 1, 2018, one or more individuals working for Defendant MSU decided to effectuate a change in the portion of the text of the "Policy for Retention, Promotion, and Graduation," as referenced in paragraph 15. The original text read as follows:

> *11. Committee Responsibilities*
> 
> ...
> *b. COSE will decide which students' academic dismissals from MSUCOM, **not involving unprofessional/unethical behavior,** should be upheld (See Section 4e);*
> 
> ...
> *5. Appeal*
> *a. If academic dismissal is upheld/decided by COSE, a student shall be given an opportunity for an appeal of the COSE decision to the Dean or his/her designee. A request for an appeal must be filed with the Dean's office within seven calendar days after the student has been notified in writing of the COSE decision. The student must notify the Associate Dean/Student Services of appeal* (emphasis added).

This amended text, originally proposed on March 1, 2018, and voted on March 8, 2018, issued via downloadable email to the Plaintiff in 2019, deleted the foregoing. Further, the entire section titled "11. Committee Responsibilities," was deleted in the 2019 Policy for Retention, Promotion and Graduation. Further, another section titled "13. Chairperson Responsibilities" is completely absent from the 2019 policy. The original section is found in the 2018 policy. It outlines the responsibilities of Defendants, including ensuring full compliance with the Policy for Retention, Promotion, and Graduation:

4

> *"The COSE chairperson shall see that all Committee meetings and activities adhere to the guidelines established in the "Michigan State University College of Osteopathic Medicine Policy for Retention, Promotion and Graduation."*
>
> *...*

Defendants collectively utilized an alleged incident of unprofessionalism that did not result in any academic punishment (such as probation, suspension, etc.) in order to see that Plaintiff was dismissed. In addition, a second document titled, "Michigan State University College of Osteopathic Medicine Committee on Student Evaluation (COSE) Responsibilities and Meeting Procedures" can no longer be found. It explicitly states:

> *Meeting Format:*
> *i. Introductory*
> > *1. The Chair will review the meeting procedures and ask the student if:*
> >
> > > *a. There was any "procedural irregularity" in the assignment of the course grade.*
> > >
> > > *b. If the student was "treated differently from other students in the course(s)."*
> >
> > *i. If the student answers yes, the meeting will not continue. The Chair will ask the student to meet with the College Medical Student Rights and Responsibility (MSRR) Representative for advice, guidance, and possible referral to the College Hearing Committee (CHC). The student and advocate(s), if any, will be excused from the meeting.*

20.   The prior policy provided an appeal to the Dean and ruled out unprofessional behavior claims during the hearing. The new policy deleted that remedy.

21.   At all times material herein, MSUCOM, as an educational institution chartered by the State of Michigan, acted under color of state law within the system of colleges and universities of the State of Michigan as established under the Constitution of 1963 and the Compiled Laws of Michigan.

22.   Plaintiff was dismissed from the School without sufficient time for remediation and in violation of his constitutional and state law rights.

23. At this time, Plaintiff has spent approximately $350,000.00 for tuition and on financial aid, as well as money for lodging and miscellaneous expenses. Plaintiff seeks by way of this Complaint recoverable damages arising out of his illegal dismissal, consequential damages, and equitable relief.

24. Defendant MSUCOM breached its obligations to Plaintiff, as heretofore described, by violating the section in the MSUCOM handbook pertaining to evaluation and dismissal of students in contravention of Plaintiff's constitutional due process rights. Defendant MSUCOM also engaged in unconstitutional conduct as described further below.

25. At this point, the Plaintiff has separately passed both components of the standardized testing required prior to graduation and was at all times relevant a fourth-year, second-semester medical student.

26. Further, as a result of the COVID-19 pandemic, the administration of COMLEX 2 has been suspended. Many seniors in medical school are being allowed to graduate and move onto residency without taking the COMLEX 2.

## COUNT I-- 42 USC § 1983, 14TH AMENDMENT DENIAL OF EQUAL PROTECTION OF THE LAWS

27. Plaintiff brings this lawsuit for injunctive relief and damages, including but not limited to reinstatement to the MSUCOM.

28. Plaintiff is a member of a protected class, namely he is Lebanese-Arab and Muslim.

29. In Count I of this Complaint, the Plaintiff seeks injunctive, declaratory, and other equitable relief against the Defendants under 42 USC § 1983 for denial of equal protection guaranteed by the Fourteenth Amendment of the United States Constitution on account of his race/national origin and religion under color of state law, including but not limited to court-ordered reinstatement, and an award of attorney fees.

30. Plaintiff is entitled to equal protection of law under the Fourteenth Amendment of the United States Constitution, and was deprived of equal protection of law rights, through the *ultra vires* conduct of the Defendants who acted under the color of state law, with forethought, intent, and malice, designed to deprive the Plaintiff of his equal protection of law rights. Plaintiff has no speedy or adequate remedy at law, and for that reason, seeks declaratory and injunctive relief in the form of reinstatement to the MSU College of Osteopathic Medicine.

6

31. After Plaintiff's hearing on April 30, 2019, Defendant MSU provided additional information in which two students were offered a fourth attempt at taking the COMLEX Level 2PE. Both students were reinstated and approved for a fourth attempt at taking the COMLEX 2PE and both of these students, upon information and belief, were not part of the same protected class membership(s) that Plaintiff belongs to. Plaintiff was therefore subject to differential treatment and not allowed to be reinstated and approved for a fourth attempt at taking the COMPLEX 2PE.

32. By refusing to reinstate Plaintiff and afford him the opportunity to take the COMLEX test a fourth time, as previously afforded other students, the Defendant MSU, through its agents and employees, including but not limited to those named as Defendants in this action, deprived Plaintiff of the equal protection of law in violation of the Fourteenth Amendment of the United States Constitution.

33. Defendants, by the actions and policies described herein, have unfairly, unequally and unreasonably singled out Plaintiff because of his protected class membership.

34. For this reason, the actions and policies of Defendants, jointly and severally, violated the Plaintiff's right to the equal protection of the laws, as guaranteed and protected by the Fourteenth Amendment to the United States Constitution. Defendants' practices constitute differential treatment, were designed to protect certain interests, and deny the protection of the laws to Plaintiff.

35. As a direct and proximate result of the aforesaid acts and omissions of the Defendants, Plaintiff was deprived of the equal protection of law on account of his race and national origin, in violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. Sec. 1983 because other students who were not of the same class membership as Plaintiff were allowed to take the COMLEX test a fourth attempt and were reinstated, whereas Plaintiff was not.

36. As a further direct and proximate result of the aforesaid unlawful acts and omissions by the Defendant, Plaintiff has suffered economic loss, loss of professional stature and career opportunities, anger, frustration, illness, public humiliation, helplessness and insecurity.

37. For a remedy of MSU's denial of equal protection of the law to Plaintiff, Plaintiff is entitled to reinstatement, compensatory damages, other make-whole relief, injunctive, declaratory and other equitable relief pursuant to 42 U.S.C. Sec. 1983, and reasonable attorney's fees pursuant to 42 U.S.C. Sec. 1988.

WHEREFORE, Plaintiff prays for the following relief:

    A. Compensation for loss of earnings that would have been generated had the Plaintiff been allowed to retake the tests.

    B. An order requiring Defendant to reinstate the Plaintiff to his prior position as a fourth-year medical student at MSUCOM.

    C. An award of punitive damages.

    D. An award of attorney's fees and costs; and

    E. For such other and further relief as the court deems appropriate and just to make him whole and bar the conduct from being repeated.

## COUNT II-- 42 USC § 1983, 14TH AMENDMENT DUE PROCESS VIOLATION

38. Plaintiff repeats and realleges the aforementioned paragraphs with the same force and effect as though set forth in full herein.

39. As a student at a public university, Plaintiff enjoyed a constitutionally protected fundamental right and interest in continuing his medical school education.

40. Plaintiff's reputation and his opportunity to pursue future employment constitute a constitutionally protected liberty interest.

41. Defendants' dismissal of Plaintiff from Defendant MSU was arbitrary and capricious and motivated by bad faith.

42. Plaintiff was not afforded an unbiased, careful, and deliberate review process either prior to or following his dismissal from Defendant MSU.

43. Plaintiff was denied a meaningful opportunity to clear his name.

44. In depriving Plaintiff of his constitutionally protected rights, including his fundamental right to and property interest in continuing his public university education, and his liberty interest in reputation and opportunity to pursue future employment, Defendants' actions abridged his right to due process of law in violation of the Fourteenth Amendment to the United States Constitution.

45. Defendant MSU, the individually named Defendants, and other agents, representatives, and employees of Defendant MSU, acting under color of

state law and in concert with one another, by their conduct, showed intentional, outrageous and reckless disregard for Plaintiff's constitutional rights.

46. The acts of the individual Defendants, and other agents, representatives, and employees of Defendant MSU as described above represent official policy of Defendant MSU and are attributable to Defendant MSU.

47. At all times relevant, Plaintiff had a clearly established right to due process of law of which a reasonable public official would have known about.

48. Plaintiff was not provided any notice that the Class of 2018 policy would be "revoked" and replaced, effective March 2018, until after Plaintiff had received the denial by the COSE of his petition for reinstatement. In other words, Plaintiff was dismissed under the Class of 2018 Policy, and he completed 2 of the 3 levels of appeal under the Class of 2018 Policy, but at the point when he attempted to exercise the third level of appeal under the Class of 2018 Policy, which had thereto been unquestionably applicable to his enrollment and the dismissal and appeal process, Plaintiff was told that the Class of 2018 Policy was no longer in effect, and that he had to proceed under a new, previously unknown policy that eliminated a series of rights and which violated his constitutional due process rights.

49. Defendants also violated Plaintiff's due process rights when they adopted a new, non-class-specific Policy for Retention, Promotion, and Graduation that is significantly different than the Class of 2018 Policy.

50. The Plaintiff's dismissal and his meetings with MSUCOM officials relating to his petitions for reinstatement each occurred while the original Class of 2018 Policy was in effect. Plaintiff was dismissed on March 7, 2018; voted on March 8, 2018, shortly thereafter, the policy changes were made effective on March 14, 2018. Consequently, the Class of 2018 Policy governed the terms of the Plaintiff's enrollment, dismissal, and the processes utilized to handle his petitions for reinstatement.

51. Unbeknownst to the Plaintiff, the Medical School's Class of 2018 Policy was revoked and replaced effective mid-March, 2018.

52. The Plaintiff was dismissed from MSUCOM on March 7, 2018 for failing after three attempts to pass the COMLEX.

53. To fulfill his obligation to exhaust all administrative remedies, the Plaintiff appeared before the COSE Clerkship Performance Subcommittee on April 13, 2018, but his dismissal was upheld.

54. On May 10, 2018, Plaintiff met with the COSE Clerkship Performance Committee, and on May 17, 2018, Plaintiff received notice that his dismissal was being upheld.

55. Plaintiff continued to follow up with the Defendants and attempt to resolve his matter informally. However, on March 4, 2019, the Plaintiff submitted his fourth-level grievance to MSUCOM College Hearing Committee of which Bruce Wolf was the Chair, stating that he believed he was unfairly and arbitrarily dismissed, requesting a hearing with the MSUCOM College Hearing Committee to appeal the COSE decision, be granted reinstatement, and be allowed to take the COMLEX exam a fourth time, as allowed under state law. This hearing was ultimately held on April 30, 2019.

56. Michigan law provides that applicants for D.O. licenses such as Plaintiff are allowed no more than six (6) attempts to pass any part of the COMLEX. *See* MCL 338.131(2).

57. The College Hearing Committee decided to uphold the Plaintiff's dismissal due to failing the COMLEX exam three times.

58. During the hearing, the Plaintiff reiterated his belief that the alleged issues of unprofessionalism and unethical behavior were not to be discussed during the COSE meeting, according to the College rules and regulations. At the close of proofs, the Plaintiff stated his belief and request that he be granted a fourth opportunity to pass the COMLEX exam. Dr. John Meulendyk told Plaintiff that 99% of the time, he would be reinstated, with precedent to support the same.

59. The Plaintiff requested reinstatement to MSUCOM to finish his program, taking the COMLEX exam a fourth time, and progress to opening a clinic in metro-Detroit in Internal Medicine or Radiology.

60. During final questioning, the Plaintiff was asked to clarify his accusation about the changed Policy for Retention, Promotion and Graduation, and responded that this policy was revised one week after his dismissal from MSUCOM, and that he believes the changes were intentionally made to apply to him.

61. After the April 30, 2019 hearing, the College Hearing Committee voted that he should be dismissed from the college, citing support in the Medical Students Rights and responsibilities policy.

62. Consequently, effective May 9, 2019, the Plaintiff's dismissal from the MSUCOM was upheld.

63. Section 11.b of the Class of 2018 Policy makes clear that the COSE is not to decide issues involving alleged unprofessional or unethical behavior. Yet, during the Plaintiff's meeting with the COSE to discuss his appeal, the COSE members repeatedly brought up the lone incident with the attending physician from one of the Plaintiff's clerkships nine months previously, for which the Plaintiff had been given a mild admonishment, and no academic probation by the COSE.

64. The COSE explored in great detail a topic that: (1) had nothing to do with the purported reason for the Plaintiff's dismissal (i.e., the Level 2-PE exam scores), and (2) was not a subject that the COSE was authorized to address, in this or any other context. In addition, COSE either ignored the extensive and extremely consistent positive evaluations regarding Plaintiff's performance, professionalism and interpersonal skills or did not make itself aware of the extensive positive performance reviews.

65. It is clear from a COSE denial letter dated May 17, 2018, that the incident alluded to paragraph 43 above. The COSE's conduct in peppering the Plaintiff with questions regarding this incident with the attending physician, and then using that incident to justify the denial, was directly contrary to the policy set forth above and in violation of Plaintiff's constitutional due process rights.

66. As a result of Defendants' breach of due process rights, Plaintiff has suffered extensive financial damages, including, but not limited to, loss of potential future wages, the inability to pursue his professional medical interest, and other non-economic damages.

WHEREFORE, Plaintiff prays for the following relief:

A. Compensation for loss of earnings that would have been generated had the Plaintiff been allowed to retake the tests.

B. An order requiring Defendant to reinstate the Plaintiff to his prior position as a fourth-year medical student at MSUCOM.

C. An award of punitive damages.

D. An award of attorney's fees and costs; and

E. For such other and further relief as the court deems appropriate and just to make him whole and bar the conduct from being repeated.

Respectfully submitted,

Dated: July 22, 2020

*/s/Ahmad Chehab*
Ahmad Chehab, Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

MOSTAFA ASSI,                                          Case No. 1:20-cv-674

    Plaintiff,                                     Hon.

v.

MICHIGAN STATE UNIVERSITY,
THE BOARD OF TRUSTEES OF MICHIGAN
STATE UNIVERSITY, ANDREA AMALFITANO,
ELIZABETH PETSCHE, JACOB ROWAN,
SUSAN ENRIGHT, and BRUCE WOLF, jointly
and severally,

    Defendants.

_____

**AHMAD A. CHEHAB (P75560)**
Attorney for Plaintiff
31440 Northwestern Hwy., Suite 110
Farmington Hills, MI 48334
Ph: 313.335.1539
E-mail: achehab@collinsblaha.com

_____

## PLAINTIFF'S JURY DEMAND

    Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

                                                Respectfully submitted,

                                                */s/Ahmad Chehab*

Dated: July 22, 2020                          Ahmad Chehab, Attorney for Plaintiff